IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:26-cv-02121-CNS

ERAG ZAHERI,

      Petitioner,

v.

JUAN BALTAZAR, Warden of Denver contract Detention Facility Aurora, Colorado,
GEORGE VALDEZ, Acting Field Office Director of Denver Field Office of U.S. Immigrations and Customs Enforcement,
TODD LYONS, Acting Director of U.S. Immigration and Customs Enforcement,
MARKWAYNE MULLIN, Secretary of the U.S. Department of Homeland Security,
TODD BLANCHE, Acting Attorney General of the United States, in their official capacities,

      Respondents.

---

## ORDER

---

Before the Court is Petitioner Erag Zaheri's Petition for Writ of Habeas Corpus. ECF No. 1. Respondent filed a response, ECF No. 6, and Petitioner filed a further Reply, ECF No. 9. Because the briefing demonstrates that Petitioner's challenge to Respondent's authority under 28 U.S.C. § 1225(b)(2) is fundamentally legal in nature, the Court declines to hold a hearing. *See* 28 U.S.C. § 2243.

As outlined below, the Court GRANTS the Petition and ORDERS Respondents to immediately release Petitioner from immigration detention within 24 hours of this Order.

## I.    BACKGROUND

Petitioner, a native and citizen of Afghanistan, ECF No. 6-1 (Quinones Decl.)[1] ¶ 4, arrived in the United States in July 2024, *id.* ¶ 5. Shortly after his arrival, Petitioner was apprehended by United States Customs and Border Patrol (CBP), determined to be inadmissible to the United States, and placed in expedited removal proceedings. *Id.* ¶¶ 5, 6. Petitioner was then transferred into the custody of Immigration and Customs and Enforcement (ICE) and placed in civil immigration detention, where he has remained since. *Id.* ¶¶ 8; ECF No. 1 ¶ 1.

While in detention, Petitioner applied for and was denied asylum and withholding of removal and was subsequently ordered removed to Afghanistan by an immigration judge (IJ). *Id.* ¶¶ 12, 14. Petitioner's order of removal became final on March 13, 2025. *Id.* ¶ 15. On April 2, 2025, Petitioner was approved to travel from the United States to Dubai, United Arab Emirates and onto Kabul, Afghanistan. *Id.* ¶ 18. Following receipt of approval, ICE scheduled Petitioner's removal flight for May 19, 2025, *id.* ¶ 19, but Petitioner refused to board the flight. *Id.* On June 4, 2025, ICE issued Petitioner a Notice of Failure to Comply pursuant to 8 C.F.R. § 241.4(g), informing Petitioner that he would remain in ICE's custody until he demonstrated that he is making reasonable efforts to comply with the order of removal and ICE's efforts to remove him. *Id.* ¶ 20. Respondents represent that at this point, Petitioner's Post Order Custody Review pursuant to 8 C.F.R. § 241.4 was stopped due to Petitioner's non-compliance. *Id.*

---

[1] Attached to the response, Respondents include a declaration from Irma Quinones, ECF No. 6-1, the Deportation Officer assigned to Petitioner's cases, *id.* ¶ 2.

Since then, ICE has attempted to arrange a Special High Risk Charter (SHRC) flight for Petitioner's removal. *Id.* ¶ 21.[2] As part of its efforts, ICE submitted a letter of removal or transportation to the U.S. Mission to Afghanistan in Doha, Qatar for transmittal to the government of Afghanistan on November 3, 2025. *Id.* ¶ 22. Respondents explain that this is necessary because "[the Department of Homeland Security (DHS) and] ICE is required to work through the U.S. Mission to Afghanistan regarding all removal efforts to Afghanistan. *Id.* Respondents state that although "ICE continues to pursue Petitioner's removal to Afghanistan," *id.* ¶ 27, it has "not yet received an adjudication of the letter of removal or transportation" since November 2025, *id.* ¶ 26.

Petitioner is currently detained at the Denver Contract Detention Facility in Aurora, Colorado. *Id.* ¶ 3.

## II.    LEGAL STANDARD

District courts may grant a writ of habeas corpus to any person who demonstrates he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). An individual in custody bears the burden of proving that his detention is unlawful. *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

## III.    ANALYSIS

The Supreme Court's seminal decision in *Zadvydas v. Davis* established the framework for a circumstance like Petitioner's—where a noncitizen with a final order of removal challenges the length of their detention pending removal from the United States.

---

[2] Respondents further explain that a SHRC is "a specially coordinated, escorted international removal flight for aliens who cannot be removed via commercial airlines or where there are particular security concerns with removal." ECF No. 6-1 ¶ 21. Respondents do not explain into which of these two categories Petitioner falls.

533 U.S. 678, 687-88 (2001). Because detention attendant to the removal proceedings is presumed "nonpunitive in purpose and effect," the "indefinite detention of a [noncitizen] would raise a serious constitutional problem." *Id.* at 690. Thus, the Court concluded that administrative detention of a noncitizen is permissible so long as removal is "reasonably foreseeable." *Id.* at 699-700.

The *Zadvydas* Court further explained that detention for six months or less is presumed reasonable, but after six months, if a person "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701; *see also Abiodun v. Mukasey*, 264 F. App'x 726, 729 (10th Cir. 2008) ("Detention lasting six months or less is presumptively reasonable; detention lasting beyond six months requires the government to rebut the [noncitizen's] showing that there is no significant likelihood of removal in the reasonably foreseeable future.") (citation omitted). "If the government meets its burden, continued detention is permitted; however, if the government fails to demonstrate a significant likelihood of removal in the reasonably foreseeable future, the noncitizen must be released." *Ahrach v. Baltazar*, No. 25-cv-03195-PAB, 2025 WL 3227529, at *2 (D. Colo. Nov. 19, 2025) (citing *Zadvydas*, 533 U.S. at 701); *see also Aguilar v. Noem*, No. 25-cv-03463-NYW, 2025 WL 3514282, at *2 (D. Colo. Dec. 8, 2025) (same).

Importantly, the Court also clarified that "[t]his 6–month presumption, does not mean that every alien not removed must be released after six months." *Abiodun*, 264 F. App'x at 729 (citing *Zadvyas*, 533 U.S. at 701). "When [a noncitizen] refuses to cooperate

in securing his removal, or actively thwarts the removal process, he can be detained for longer than the *Zadvydas* presumptively reasonable six-month period." *Williams v. Sessions*, No. 18-cv-2633(DSD/SER), 2019 WL 234350, at *4 (D. Minn. Jan. 16, 2019), *aff'd as modified sub nom*. *Williams v. Barr*, 786 F. App'x 71 (8th Cir. 2019) (collecting cases). Under 8 U.S.C. § 1231, the statute pursuant to which Petitioner is currently detained, ECF No. 6 at 2 (citing ECF No. 6-1 ¶ 16), (a)(1)(C), a noncitizen's "removal period shall be extended beyond a period of 90 days and the [noncitizen] may remain in detention during such extended period if the [noncitizen] . . . acts to prevent the [noncitizen's] removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C).

In this case, Respondents do not dispute that the length of Petitioner's detention since the removal order exceeds the presumptively reasonable six-month period recognized in *Zadyvas*. ECF No. 6 at 5. Therefore, Petitioner bears the burden of providing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Although Respondents argue that Petitioner has failed to meet this burden, ECF No. 6 at 5, the Court disagrees.

In the Petition, which is supported by numerous exhibits, Petitioner states that since refusing to board the flight to Afghanistan in May 2025, he has requested updates from ICE regarding the status of its removal efforts, *see, e.g.*, ECF No. 1 ¶¶ 31, 33, but has not received an explanation of when his removal is likely to occur, *see id.* ¶ 45. On December 13, 2025, in response to one of Petitioner's requests, ICE stated that it "looks like [the government is] trying to find a 3rd country for [Petitioner] to go to," but no

additional details were provided. ECF No. 1-12. Petitioner's other request for an update has gone unanswered by ICE. *See* ECF No. 1 ¶ 33.

Additionally, as Petitioner puts it, "[u]pon information and belief, Respondents have failed to effectuate the removal of many other similarly situated natives and citizens of Afghanistan due to the current status of diplomatic relations or lack of effective repatriation arrangements between the United States and Afghanistan." *Id.* ¶ 44. Although neither party provides any facts regarding the current state of diplomatic relations between the United States and Afghanistan, the Court notes that other courts have recently observed that "[a]ny effort to remove [an Afghani citizen] to Afghanistan runs through the Taliban. There are no diplomatic relations between the United States and the . . . regime controlling Afghanistan." *Wazir v. Att'y Gen. of United States*, No. 3:26CV526, 2026 WL 1122610, at *3 (M.D. Pa. Apr. 24, 2026).

Based on the foregoing, the Court finds that there is good reason to believe that Petitioner's removal is not significantly likely to occur in the reasonably foreseeable future. *See Fazel v. Lyons*, No. 5:26-CV-00692, 2026 WL 1664099, at *5 (S.D. Tex. June 9, 2026) (noncitizen petitioner established that he had "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" where his "only country of citizenship is Afghanistan;" "he cannot be removed there without a transit letter;" and "[h]e has not been notified of a third country for removal").

With that, the burden shifts to the government. Considering the arguments in the response, ECF No. 6, the Court finds that Respondents have failed to provide "evidence sufficient to rebut [Petitioner's] showing." *Zadvydas*, 533 U.S. at 701. At this point,

6

Petitioner's detention "has lasted for at least twelve months, more than twice the length of time the Supreme Court decided was 'presumptively reasonable' in *Zadvydas*." *Vincent v. Blanche*, No. 2:26-cv-00104-JB-KK, 2026 WL 1030619, at *6 (D.N.M. Apr. 16, 2026) (citation omitted). "Given this prolonged detention, 'what counts as the 'reasonably foreseeable future' must conversely shrink." *Id.* (citation omitted). But Respondents make no representation at all regarding when Petitioner's removal might occur, let alone argue that it is significantly likely to occur in the reasonably foreseeable future.

Instead, Respondents represent that they "submitted a letter of removal or transportation" to facilitate Petitioner's removal back to Afghanistan on November 3, 2025, ECF No. 6-1 ¶ 22, but have not yet received an answer, ECF No. 6 at 3 (citing ECF No. 6-1 ¶¶ 26, 27); *see also* ECF No. 6-1 ¶ 26 ("ICE has not yet received an adjudication of the letter of removal or transportation."). And as to the status of that request or Respondents' removal efforts generally, they simply state that "ICE is continuing to pursue [Petitioner's] removal to Afghanistan." ECF No. 6 at 3. This statement, which does "not provide[] the Court with a clear timeline or plan for removal . . . fail[s] to prove that removal is reasonably foreseeable." *Salazar-Martinez v. Lyons*, No. 2:25-cv-00961-KG-KBM, 2025 WL 3204807, at *2 (D.N.M. Nov. 17, 2025). As the Court has previously explained, "[t]he mere prospect that Petitioner may, at some point, be removed . . . does not demonstrate that there is a 'significant likelihood of [Petitioner's] removal in the reasonably foreseeable future.'" *Tesfalem v. Baltazar*, No. 1:26-cv-01025-CNS, 2026 WL 1560556, at *2 (D. Colo. May 22, 2026) (citing *Zadvyas*, 533 U.S. at 701). The Afghan government's lack of response is also significant given that, as Respondents

acknowledge, such travel documents are required before Petitioner's removal can be effectuated. ECF No. 6–1 ¶ 22; *see also Fazel*, 2026 WL 1664099, at *4 (observing that "starting in August 2025, Afghanistan barred Afghanistan nationalists from traveling on valid or expired passports without an Afghanistan travel issued transportation letter") (citation omitted).

Respondents' additional argument that Petitioner's detention "has not become constitutionally unreasonable given the delays caused by Petitioner's own refusal to comply with removal efforts," ECF No. 6 at 5–6 (citing ECF No. 6-1 ¶ 19), is equally unavailing. As support, Respondents cite *Abdul v. Lynch*, for the proposition that "[a] detainee cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future if the detainee controls the clock." No. 15-cv-00795-PAB, 2015 WL 13229211, at *2 (D. Colo. Oct. 16, 2015). Although an accurate statement of law generally, that case provides no support for Respondents' position because in that case, unlike here, "[a]pplicant's home country provided a travel document allowing his reentry and there is no indication that the document will not be re-issued." *Id.* Here, there is no indication when the Afghani government might approve Petitioner's travel documents, and Respondents do not even venture to guess.

Moreover, in *Abdul*, Petitioner's habeas application was made four months after his failure to cooperate with removal efforts. *Id.* Here, it has been over a year since Petitioner was last provided with an opportunity to depart from the United States, ECF No. 6-1 ¶ 19, which is longer than the presumptively reasonable period prescribed by the Court in *Zadvyas*. And even though Petitioner's "removal period [can be] suspended or

8

tolled during [his] continued non-compliance," *Qi Xiang Ling v. Hendricks*, No. CIV. 13-7610 KM, 2014 WL 1310294, at *6 (D.N.J. Mar. 27, 2014) (citing *Orelhomme v. Napolitano,* No. 11–0496, 2011 WL 3155921, at *1 (W.D.La. June 28, 2011)), Petitioner represents that he has "continuous[ly] cooperat[ed]" with the government's removal efforts since he refused to board his flight over a year ago, but "has not been provided with any opportunity to depart the United States since May 19, 2025." ECF No. 1 ¶ 43; *see also* ECF No. 9 at 4 ("Petitioner has remained detained for more than one year after the said refusal to cooperate and for more than ten months after affirmatively expressing his willingness to cooperate with ICE.").[3] Respondents do not dispute this fact. Moreover, even if Petitioner's non-compliance weighs against the running of his removal period, a single instance of noncooperation cannot indefinitely toll the removal period and justify prolonged detention without end. Such a result is precisely what *Zadvydas* sought to avoid.

Accordingly, because Respondents have failed to rebut Petitioner's showing, and because Petitioner has been held in immigration detention for over a year since his non-compliance efforts, his detention is unreasonable under *Zadvyas*, and his Petition is granted. *See Fazel*, 2026 WL 1664099, at *4–5 ("Respondents have not rebutted the showing of good reason to believe that there is no significant likelihood of removal in the

---

[3] Additionally, as Petitioner notes in the reply, when he refused to board the flight to Afghanistan, "[he] feared return to Afghanistan in light of the rapidly deteriorating conditions there," ECF No. 9 at 3 (citing ECF No. 1 ¶ 27), but "'as soon as August 2025,' [he] informed an ICE officer of 'his willingness to cooperate with ICE,'" *id.* at 3–4 (citing ECF No. 1 ¶ 28). Additionally, Petitioner's "subsequent written correspondence further corroborates his ongoing and consistent efforts to facilitate his removal, including personally contacting third countries to seek permission to enter and repeatedly requesting guidance from ICE regarding steps necessary to effectuate removal." *Id.* at 4 (citing ECF No. 1 ¶¶ 28–45).

9

reasonably foreseeable future" where petitioner's "only country of citizenship is Afghanistan;" "he cannot be removed there without a transit letter;" "[t]he letter [of transit] was initially requested nearly nine months ago, with no response" and "Respondents have followed up on the request, [but] there has been no progress");[4] *see also Abbasi v. Baltazar et al*, No. 1:26-cv-01501-SKC, ECF No. 9 (Apr. 28, 2026) (determining that Respondents failed to "show that removal is reasonably foreseeable" despite representing that "Respondents have taken steps to remove Petitioner to his home country of Afghanistan" by submitting "a letter of removal or transportation to the U.S. Mission to Afghanistan" because "ICE submitted this letter . . . over 7 months ago, and concede that they 'do not have additional information to present to the Court concerning the likelihood of Petitioner's removal to Afghanistan'") (citations omitted).

## IV.    CONCLUSION

Consistent with the foregoing, the Petition for Writ of Habeas Corpus, ECF No. 1, is GRANTED. The Court ORDERS Respondent to immediately release Petitioner from immigration detention within 24 hours of this Order. Petitioner's "release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances." *Zadvydas*, 533 U.S. at 700.  Respondents are ORDERED to file a status report within TWO DAYS of this order to certify compliance.

---

[4] That Respondents have received no response from the Afghani government regarding Petitioner's travel for over six months is telling. As other Courts have also observed that "starting in August 2025, Afghanistan barred Afghanistan nationalists from traveling on valid or expired passports without an Afghanistan travel issued transportation letter." *Fazel*, 2026 WL 1664099, at *4 (citation omitted).

DATED this day 16th day of June 2026.

BY THE COURT:

_____

Charlotte N. Sweeney
United States District Judge